Good morning, Your Honor. May it please the Court. My name is Michael Thomas. I'm with Thomas Quinn and Krieger. We represent the petitioners in this action. Blackwater Security Consulting and Continental Insurance Company. I'd like to reserve two minutes for rebuttal if that's okay with the Court. The question we ask this Court to answer today is fairly simple. Should the Longshore and Harbor Workers' Compensation Act be mechanically administered in a way that compensates for a loss that no longer exists? If the Benefits Review Board's decision is allowed to stand, a number of absurd results will happen. First, a class of workers will receive a windfall payment for the loss of wages for the rest of their life, even though those wages would no longer be available to them to earn. Defense-based Act workers will be better off financially if injured than not injured, creating a disincentive to maximize subsequent wage earnings and also potentially encouraging unnecessary or even fraudulent claims. You make many of those arguments in your briefs as well, but aren't those policy arguments? I mean, shouldn't you direct those to Congress who made these structures? I mean, aren't we just supposed to apply the law here? I mean, it seems like those points that you make are interesting and maybe compelling, but I'm not sure they're properly directed at this forum. Well, I think that this forum or any court hearing, an appellate court hearing, a statutory argument, needs to consider the legislative intent behind that argument and the purpose behind this particular act. For instance, we know that an absurd result is to be avoided if the mechanical application of an act is going to result in an absurd, incongruous, or harsh thing. And that's well-established in Supreme Court case law. It's well-established in the case law of this Court. In fact, one of the cases that's been briefed by both sides very in-depth are the Rambo cases. And in that case, the Court did exactly what I'm asking you to do today, with the exception it was on the other side. John Rambo was a longshoreman who, sometime in the 1980s, was injured. And at the time he was injured, he was earning about $500 a week. He reached maximal medical improvement. He was determined to have a permanent disability, and he then collected $120 a week or so for some time. A number of years later, he was back at work, and he was earning over $1,500 a week. Section 22 modification was filed, and the Court granted that modification because he no longer had lost earning capacity. And that's all standard. Well, that's where the problems began. Because the fundamental purpose of the act, as this Court stated, and as the Supreme Court stated afterward, is to compensate for a loss of future earnings as a result of injury. And in Mr. Rambo's case, he didn't have a loss anymore. If we applied the mathematical formula that respondents wish you to apply and just strictly adhere to it in a formulaic manner, Mr. Rambo got zero. And the problem with that is that is a partial... But the question is whether or not the statute requires that formulaic application, right? That's right, and I don't think that it does. This statute is extremely flexible, and the flexibility is built in. It's built into 8H, Section 908H of the Longshore Act, which was used in Rambo, which has been used in other situations, to set a retained, a permanent disability based upon retained earning capacity that isn't necessarily based on this mathematical formula. So 8H gives us that flexibility. It talks about... Excuse me. It talks about in the interest of justice, reasonableness, having due regard for usual employment, and any other factors. And that is exactly what is happening here today. And Mr. Raymond is 47 years old. He lives in Yuma, Arizona with his family. He works in Yuma, Arizona. At least at the time of trial, he was earning about $50,000 annually in Yuma, Arizona, in his ordinary, lifelong occupation of law enforcement, and law enforcement-related occupations. The single only difference between that fact now, and that fact that it would be now, regardless of whether he'd ever gone to work for Blackwater, is that he is receiving $1,144.44 a week, tax-free, compensating him for a loss that he no longer has. So if the fundamental purpose of this act is to compensate for loss, why are we compensating for a loss that doesn't exist? You cannot lose that which you do not have. And this is the opposite, going back to the Rambo case. In Rambo, this court and the Supreme Court used 8H to get around a harsh result existing in this Longshore Act. Because the strict application of the Longshore Act would have said, Mr. Rambo, you get $0 from this point forward. And the problem with that is, is that after a year, Mr. Rambo would not be able to modify his award pursuant to Section 22 of the Longshore Act, due to statute of limitations reasons. Mr. Rambo still had an injury. He had injured his shoulder, I believe. And there was some concern on behalf of his lawyers and him and the courts at that time, that at some point in the future, some nebulous point in the future, he may have permanent disability again. His earnings may decrease again because of his injury, due to the natural effects of his injury, such that he would not longer be able to earn $1,500 a week. And that his wages may again drop to $0 or something less than $500 a week. And at that time, he wouldn't be able to be compensated for that loss. So the court, using 8H and understanding the fundamental purpose of the Act, established what I now call a Rambo Award, which is a $1 a week award, which allows Mr. Rambo to continue receiving benefits, because that Section 22 limitation applies a year after the last receipt of disability benefits. So as long as he's getting $1 a week, he keeps open his ability to be compensated for a future loss still related to this injury. And one of the big differences is that in the Rambo case, nobody knew whether Mr. Rambo would or would not ever become disabled again, after the point in time that it was heard at the court. In Mr. Raymond's case, it is an undisputed fact that he would have stopped working by August of 2011. This is a certainty based on this evidence. So are you saying the board misapplied the statute? Yes. In what way? In that they mechanically applied a mathematical formula. Isn't that what they're supposed to do? I mean, it seems like that's what they're supposed to do. No, that's not what they're... I disagree that that is what they're supposed to do. They are supposed to set the earning capacity. I mean, Congress sets the earning capacity, apparently in this whole compensation calculation. I mean, they're the ones that have decided, you know, what contractors working temporary jobs in war zones will get if something like this happens. I'm trying to figure out why or how you think, because, I mean, that whole structure, you know, depending on if you're permanent or temporarily disabled under total disability or under partial disability, there's all the calculations, and it looks like you're, you know, the reviewing body is supposed to plug all of that in, and I'm trying to figure out your argument. Did you say they shouldn't have done that? They did it incorrectly? What's your argument? Well, what the board did was they overturned a judge's decision, and the judge had used his discretion under 8H of the Act to set the earning capacity. And this reviewing board said that was incorrect, that they needed to, the ALJ needed to have applied, because that's what the statute requires, the proper computation set forth in the statute. So if, let's just assume that you're supposed to apply, and that's because I just want to narrow your argument if I can. If you're supposed to apply the calculation in the statute, did the board do it incorrectly? I don't think the board made a calculation under the statute, but they, if you assume that there is a calculation that applies to every single situation under the Act, then Mr. Raymond's, his pre-injury earnings were determined by the judge to be . . . So was that, I'm sorry, was that yes, they applied it, or no, they applied it incorrectly? Well, they didn't apply anything. They just told the judge, you can't . . . Right. I mean, because that judge didn't apply it. I'm just, so are you saying that they should have just said, no, this was a case for complete discretion, and that calculation shouldn't have been applied? Yes, and that's what the judge considered, because the judge gave due consideration at trial for this future but definite fact that Mr. Raymond would not be working in Afghanistan any later than August of 2011. What's your response to the director's argument that you've waived this argument by failing to present it to either the ALJ or the board? Well, that has to do with the average weekly wage side of this, which I haven't begun to talk about, but a nice segue into that topic. I think that that's preposterous. First of all, it was raised wage was an issue at trial. Judge Etchingham made a determination on wage. It was listed as an issue. It was addressed in the decision by the ALJ. Second of all, wage was actually raised by the respondents in this case when they appealed the case to the Benefits Review Board. Their argument was, there's two average weekly wages being applied here, and so they raised wage, it was addressed. And then once it got to the Benefits Review Board, it certainly was argued in the context that you can't apply this formula that Judge McGee and I were just discussing without having first wage. So by virtue of the fact of challenging the application of this formula, that issue is waged. And most importantly, the law does not require the doing of a futile act. The Supreme Court has said that. This court has said that. And the Benefits Review Board has made it very clear under their K.S. or Simon's decision and their profit decision that judges do not have the discretion, under Section 10C, any longer to set wages other than those wages that are earned in a war zone by a contractor who's in a dangerous situation that has a one-year contract. And that actually, Your Honor, is the problem. The problem is that judges have been hamstrung. They've had the discretion that is ordinarily given them under 10C to apply reason and fairness in the interest of justice. That's been taken away from them by these two decisions of the Benefits Review Board. So there's no reason for me to raise it even at trial because I know what the answer's going to be. And until I get to this court or some other circuit court, because no circuit has addressed it yet, there's no sense in raising it because we know what the judge is going to do. He's going to mechanically apply a mathematical formula. And this Act is not built that way. There's discretion set in 10C. There's discretion set in 8H. There is this language in 8C21 that talks about for the continuation of the partial disability, or the continuance, I think they use. Do you want to reserve any of your time? I will reserve the rest of my time unless there's other questions. Thank you. May it please the court, I am Joshua Glellen, appearing on behalf of Mr. Raymond, and I will share argument time this morning with Mr. Boyle on behalf of the director. So I will be responsible to extricate myself from our discussion in eight or nine minutes. Many claimants would benefit greatly from the regime that the administrative law judge tried to effect and that Blackwater tries to defend before the court this morning because in many circumstances, the claimant's earnings several years after the injury could very firmly have been predicted to have increased substantially, so that the loss of earning capacity resulted from not being able to pursue that career any longer is greatly underrepresented by the difference between the earnings at the time of the injury and those after recuperation from the injury, often from highly skilled work to unskilled minimum wage work. Over time, the loss of earnings of such injured workers goes up. Now, in this instance, the contention, and there is some reason, there is realistic appreciation in that argument, that these overseas employees would have returned long before the end of their careers to stateside work paying significantly less. We do not challenge the reasonableness of that perception, or even of the perception that in many cases like this, the claimant is overcompensated by the application of the Act's formula. But when those other claimants have come before the court saying, look what my earnings would be today if this injury had not happened, and compensate me based on the difference between what I am able to make now and what I would have been able to make if the injury hadn't happened, the courts have uniformly turned it away, because that's not what the statute provides. We first have to find the average weekly wage, the annual earning capacity at the time of the injury, and the Act's formula says we subtract from that the residual earning capacity that the worker does have after recuperation from the injury. That's what the award that the board substituted for the ALJ's two-tiered award, that is one award until he would have come back from Afghanistan, that replaces the earnings that everybody recognizes he did lose as a result of the injury during that period, and then a different award based on a different, in the absence of the injury, annual earning capacity. Your opposing counsel did say that one of the reasons or manners to address this calculation is that it results in an absurd result. I don't know if it results in an absurd result, but we are calculating his, I think he was making $35,000 prior to his temporaries? $35,000 to $45,000, yes. And then at the time of his injury, he was making $179,000? Well above the Act's maximum, yes. And then when he returned, he was making $51,000? A couple of years later, yes. And so we're looking primarily on this sort of heightened, or rather heightened amount of salary that he was not making either before or after. So does that at all support why it may have been appropriate for the ALJ to utilize her discretion in doing what she did? I would say it does show that that two-tiered approach is best calculated in many cases to calibrate the compensation to the actual loss of earnings. I acknowledge that. But so the same thing is true as to the claimants who were in line for a promotion or who were casual longshoremen and just about to get their union card that would give them access to much more frequent, much more regularly available employment. Every case, every case, if we go, has circumstances down the road in the future in which the claimant's earnings would have changed significantly even if the injury had not occurred. The Act does not let that into the proceedings. In a tort case, of course, that is what the economist would do. They would project the claimant's earnings over his entire career and try to replace the loss over the entire career. We don't let claimants have access to that kind of calibration, and we can't let employers have it either. That's what would upset the balance here. Is Mr. Raymond somewhat overcompensated in this case? Are other claimants in these Defense Base Act cases who have permanent disabilities overcompensated? Yes. But the ones who are injured, and the much more frequent cases, much more frequent cases, in which the claimant is injured during the overseas employment and the duration of the temporary disability from doing that work does not last out the period when they were engaged to work there, and after six weeks, three days, four months of disability, they return to that work. Now, for that six days or four months of disability, we know the claimant really has lost that full average weekly wage. The appropriate average weekly wage in the case where the claimant's disability is short-term certainly has to be. I mean, for purposes of calibrating it to replace lost earnings, the AWW has to be based on what he's earning overseas exclusively. That's what his earning capacity is for that period. But we can't have the determination of annual earning capacity at the time of the injury depend on how long the disability is going to last. If we know it's a lifetime disability, sure it would be reasonable to say for five years he was going to be earning $178,000 and then he was going to be earning $50,000, so over his lifetime that's an average of whatever it would be, and we should call that his annual earning capacity. No, that obviously is going to grossly undercompensate the majority of claimants who are disabled only during the period when they would have had these higher earnings. That's why the statute is set up, and I don't want to say why the statute is set up. This is black-letter workers' compensation law. We base the disability compensation on the difference between the workers' average annual earning capacity at the time of the injury, and at the time of this injury, Mr. Raymond certainly had the capacity. He had a year-round, full-time, regular job. No, he wasn't going to keep doing it forever, but he had a regular, full-time, year-round job and therefore an annual earning capacity. Should we accord any deference to these BRB decisions, and do we need to do so in order to address the petition for the court? No, certainly not to the board's decision. The Supreme Court and this court have many times said since the board is not the administrator of the statute, it gets no deference. The director, on the other hand, does get more deference, and the ALJ, or Meade deference, if you will, respect. And the director has supported the board's, Simon's rule throughout its history. I believe he supported it before the board, and certainly has since the board issued its first decision on the point. I will relinquish the voting. Thank you very much. Good morning, Your Honors. May it please the court. Matthew Boyle on behalf of the director. Your Honors, I think the primary argument that the petitioner is making here is that the ALJ was correct in stopping Mr. Raymond's personal, I'm sorry, permanent partial disability benefits because Mr. Raymond indicated that he would have returned to stateside employment in 2011. And the petitioner's argument on that is that because he would have returned, he would no longer have had a loss of wage earning capacity. The primary problem with that, Your Honor, is that it misunderstands what employees are paid for. Employees under this act are paid for a disability. And a disability is defined as an incapacity, an incapacity to earn the wages that the claimant was earning at the time of the injury. Now, if Mr. Raymond had simply stopped working overseas, absent any injury, come back to the states, and decided to work there for the rest of his life, would he have been making less? Yes. But he would not have lost the capacity to go back to his overseas job and earn the higher overseas wages. The only reason he became incapable of doing that was because his injury prevented him from doing the job that he was doing overseas. That is the incapacity that people are paid for. It is not simply that your earnings went down. It is that your ability to earn went down compared to what you were earning at the time of the injury. I would also like to address the petitioner's reliance on the Rambo cases. Rambo is extremely distinguishable from this because what the Rambo case looks at exclusively is post-injury earning capacity. And it recognizes that post-injury earning capacity can go up and can go down. And it recognizes that in some cases, what the claimant is actually earning is not representative of his post-injury earning capacity. In that case, Mr. Rambo had a shoulder injury, but he was doing a job that was much higher paying than his previous job that didn't require him to use his shoulder. The court said, what if he loses that crane operator job? He can't do that job anymore. Then we have to look into the future and see whether that physical disability that he has can result in an economic loss. But the point about Rambo is that Rambo did not look at average weekly wage at all. They did not say, you can change as we go along what the claimant's average weekly wage is. They said, based on the clear language of Section 8H, which goes to post-injury earning capacity, that we can consider the effect of the disability as it may naturally extend into the future. But you can only do that based in determining the post-injury earning capacity, not in determining the average weekly wage. Judge Merger, you asked earlier about the waiver argument. The reason we believe that the average weekly wage argument is waived in this case is because what the petitioner is arguing in this case is that the ALJ should have used a blend of domestic wages, pre-injury domestic wages, and overseas wages to determine the average weekly wage. That was never raised at all before the ALJ. It was not raised before the board. And in fact, the petitioner actually argued for the exact opposite before the ALJ, saying that Mr. Raymond's average weekly wage must be calculated based on his actual earnings in Afghanistan. Now, he's saying that it would have been futile to raise that argument in light of the fact that the board's KS case is out there. But it is not. It would not have been futile at all because the KS case and the profit case involved a different situation in which the claimant had gone over and had only done two or three months out of a one-year contract, and the court was trying to determine whether it was fair to base it on overseas wages exclusively or whether you had to look back and include the rest of that prior year. Neither case, neither KS nor profit, involved testimony about whether the claimant might leave his overseas employment, which is the key in this case. So it is quite possible that if Blackwater had raised that argument, the board would have come to a different conclusion. Now, if the board... I'm sorry, if the court believes that it was a foregone conclusion and that the court would have applied KS, then I think the appropriate thing to do is to look at the statute and decide whether under the circumstances of this case the use of overseas wages exclusively is correct under the statute, which we believe it is. If you believe that there is room for a different interpretation, then I would suggest that you remand the case, not only so that the board and the ALJ can look at the circumstances of this case and apply the statute to it, but to determine whether Blackwater has made a sufficient factual record for the board to make that determination. Does the court have any further questions? No. Thank you. Thank you. I was writing down all these points, but I think there's something that has just become clear. In 100 pages of briefing by respondents and in 15 minutes of arguments, not once has anybody articulated any good reason why Daniel Raymond should be receiving $1,144.44 a week. Not one time. That demonstrates an absurdity. It demonstrates an incongruous result because there's no good reason to compensate for a loss that does not exist. The American system, the Longshore Act, no other system in the United States compensates for loss. But the Senate itself acknowledged that it would sometimes result in incongruous results. It would sometimes result in some incongruity. That's true. But not where there isn't a loss. I mean, some people get undercompensated, you might argue. For instance, somebody could lose their arm but not their job. And a loss of an arm is, in most people's opinion, I think, worth well more than 312 weeks of average weekly wage to any person. But Congress has determined what that damage would be. They said, this is the loss, this is how much the employer is going to pay for it. And likewise, some people are going to get a little bit overcompensated. You know, they may go back to their normal earnings, they may have a small injury, and they may get a scheduled award, and they get to keep that award even though they've never lost earning capacity. Those folks may be overcompensated. But what's at issue here with Raymond, which sets it apart from everything else that's been discussed, is that we're talking here about a brand new issue that results from a very unique situation and going into changes in the way our government conducts its business and so forth. But the petitioners are not asking for this court to look at anything hypothetical. We are asking simply to look at what's proven, that by August of 2011, there's no loss. And it is an oxymoron that there would be compensation for that which is not already lost. Thank you. Thank you. Thank you for your arguments. The case is now submitted.
judges: Hawkins, Tashima, Murguia